UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **RICKY LEE EDSALL, SR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CAUSE NO. 1:06-CV-389** |
| ) | |
| **CSX TRANSPORTATION, INC.** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER
## ON COUNT I

### I. INTRODUCTION

On December 23, 2005, Plaintiff Ricky Lee Edsall, Sr., filed this suit against Defendant CSX Transportation, Inc. ("CSXT"), his employer, under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et. seq.* (Docket # 1.) In Count I, Edsall alleges that he "sustained repetitive stress injuries to his neck, back, wrists, and hands while performing trackman work" during his employment with CSXT. (Compl. ¶ 5.) He further alleges in Count II that he incurred bodily injuries as a result of a specific event that occurred during the performance of his duties. (Compl. ¶ 11.)

The Defendant moved for partial summary judgment on Count I (Docket # 38), asserting that the claim is barred as a matter of law because the three year statute of limitations provided in 45 U.S.C. § 56 had long expired by the time Edsall filed suit.[1] (Def. Br. in Supp. of Mot. for Partial Summ. J. ("Def. Br.") 5.) Edsall disagrees, arguing that his claim is timely because he

---

[1] CSXT's separate motion for summary judgment concerning Count II will be addressed in a separate Opinion and Order filed contemporaneously with this Order.

1

only became aware of the nature of his injuries in 2004 and that the medical care he received from the late 1980s through the early 1990s pertained to an entirely separate injury. (Pl. Resp. in Opp'n to Def.'s Mot. for Partial Summ. J. ("Resp. Br.") 5, 10.)

Because we believe the record raises material issues of fact, the motion for partial summary judgment will be DENIED.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[2]

Edsall worked as a trackman for CSXT for almost thirty years, from October 1976 until February 2004. (Edsall Dep. 52, 155.) Working on the railroad involves physically demanding labor, including heavy lifting and the use of large equipment, hand tools, hydraulic tools, and vibrating machinery. (*See, e.g.*, Edsall Dep. 81, 92, 113, 115, 137-40.) Edsall began experiencing aches and pains as early as 1978, which persisted throughout the 1980s. (Edsall Dep. 81, 89-92, 98.) At his deposition, Edsall attributed these pains early in his career to his job with the railroad, describing them at one point as "[n]ormal, everyday railroad aches and pains," (Edsall Dep. 92), and explaining that pain is "part of the job. All your body parts hurt from the railroad." (Edsall Dep. 89.)

After twelve years on the job, however, Edsall started to see a chiropractor to help alleviate his "aches and pains." (Edsall Dep. 92, 98-99; Def. Br. Ex. C at 1-2.) More specifically, on February 8, 1988, Edsall visited Gerard Jansen, D.C., for pain in his back, neck, and hands. (Edsall Dep. 98-99; Def. Br. Ex. C at 1-2.) Dr. Jansen documented that Edsall had lower neck pain and stiffness on and off for ten years, noting that Edsall had been in a car accident ten years prior. (Resp. Br. Ex. 3 at 7.) During 1988, Edsall apparently visited Dr.

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Edsall, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

2

Jansen about thirteen times for chiropractic treatments.  (Resp. Br. 10, Ex. 3 at 5.)  Whether Edsall discussed with Dr. Jansen the effect of his physical labor is unclear, but at his deposition, Edsall recalled that through the 1980s he experienced the "same railroad aches and pains" and that he "had a lot of pain."  (Edsall Dep. 98-101.)

On February 10, 1989, Edsall sustained a back injury on the job that resulted in an intervertebral disc herniation.[3]  (Def. Br. Ex. C at 3; Edsall Dep. 242.)  Consequently, Edsall was off work from May 5, 1989, to July 6, 1989.  (Edsall Dep. 244; Def. Br. Ex. C at 3.)  During this time, Edsall underwent many chiropractic treatments from Dr. Jansen and two epidural steroid injections from Dr. Michael Arata.  (Resp. Br. Ex. 3 at 3-5, 13-14.)

After he returned to work, Edsall continued to receive therapy from Dr. Jansen on a biweekly to monthly basis for the back injury.  (Def. Br. Ex. C at 3.)  In a letter Dr. Jansen sent to Edsall's insurance provider dated December 14, 1990, Dr. Jansen explained that the treatment was necessary and that "his job is with the railroad and . . . he works with a section crew which involves heavy lifting, bending and twisting."  (Def. Br. Ex. C at 3.)  Edsall continued frequent therapy throughout 1991, evidently visiting Dr. Jansen about twelve times.  (Resp. Br. Ex. 3 at 2.)

Edsall's problems with "periodic low back pain" and "episodes of lower extremity numbness" continued in 1992 during which he visited Dr. Jansen at least another ten times.  (Def. Br. Ex. C at 4-5.)  Dr. Jansen wrote to Edsall's insurance provider on December 17, 1992:

---

[3] Edsall avers that he never brought a claim or even filled out an incident report, foregoing the latter because he was unable to contact his supervisor until after forty-eight hours had passed. (Edsall Dep. 243.)  At that time, his supervisor allegedly told him that a report filed more than forty-eight hours after an incident could result in the company investigating him and giving him time off.  (Edsall Dep. 243.)  Consequently, Edsall opted instead to take a week's vacation to see if the pain would subside, but it did not.  (Edsall Dep. 243.)

"[Edsall's] condition continues to be chronic due to the physical challenges of his job with the railroad. The lifting and bending that he encounters in his daily activities continues to flare up the old disc injury." (Def. Br. Ex. C at 5 (emphasis added).) His diagnosis was "[c]hronic intervertebral disc syndrome with myalgia and sciatic paresthesias." (Def. Br. Ex. C at 5.)

Edsall's last documented visit to Dr. Jansen was on March 3, 1993, explaining that Dr. Jansen had instructed him to discontinue his visits when he thought he no longer needed chiropractic care. (Resp. Br. Ex. 3 at 1; Edsall Dep. 113.) Edsall stated that though he still had pain after ceasing his visits to Dr. Jansen, he chose to "[j]ust deal[] with it." (Edsall Dep. 113-14.)

Almost three years later, Edsall's family doctor, Dr. Gerald Warrener, M.D., referred Edsall to Dr. Isa Canavati, M.D., F.A.C.S., for a neurological examination. (Reply Br. Ex. E at 2-3.) Dr. Canavati reported on January 17, 1996, that Edsall had neck and bilateral arm pain and had been experiencing neck pain on and off over the previous five years. (Reply Br. Ex. E at 2.) Dr. Canavati also noted that Edsall's symptoms were spontaneously aggravated in December 1995, resulting in "pain radiating to the shoulder and arm with numbness involving the hand." (Reply Br. Ex. E at 2.) Edsall also complained to Dr. Canavati that he had muscle cramps in the shoulders and infrascapular region, and that his pain worsened at night because laying down or sleeping on his side aggravated the discomfort. (Reply Br. Ex. E at 2.) Dr. Canavati's impression was that Edsall had a cervical strain, ruled out central disk herniation, and suggested an MRI. (Reply Br. Ex. E at 3.)

Edsall's next relevant doctor visit was not for another three years, though he

4

acknowledged that his work on the tampers and in conducting machine maintenance beginning in 1998 caused daily pain in his back, neck, arms, and hands. (Edsall Dep. 118-19.) More particularly, Edsall visited Dr. Warrener on February 19, 1999, for various problems including "throbbing" in his neck and aching shoulders and hands. (Reply Br. Ex. E at 4.) Edsall stated that he continually suffered pain in his lower back, neck, arms, and wrists from the spring of 1999 through 2000 due to his work on the tamper, with its constant rocking motion, and his use of vibrating hydraulic equipment. (Edsall Dep. 117-18, 133-39.)

Edsall's back pain apparently persisted, because on a January 15, 2002, medical exam sheet for a commercial driver fitness determination, Edsall checked the box for "[c]hronic low back pain." (Reply Br. Ex. E at 5.) He also testified that from March 2002 through December 2003, he endured the familiar symptoms in his back, neck, arms, and wrists. (Edsall Dep. 144-45.) Edsall explained that while the pain's severity fluctuated, he experienced at least some pain all the time because the job was heavy and hard. (Edsall Dep. 145.)

Ultimately, in May 2003, Edsall was referred by his family doctor to Dr. Ajay Gupta, M.D., for the problems with his arms. (Resp. Br. Ex. 4 at 9; *see also* Edsall Dep. 145-147; Def. Br. Ex. C at 7.) Nonetheless, Dr. Gupta's tests returned mostly normal results, detecting no carpal tunnel syndrome. (Resp. Br. Ex. 4 at 9-10; Def. Br. Ex. C at 7.)

Five months later, in October 2003, Dr. Warrener again referred Edsall to Dr. Canavati for a neurological evaluation. (Def. Br. Ex. C at 6-8.) On his Health and History Data Sheet, Edsall described his symptoms as "pain in hands and arms, can't sleep, pain in back also," and wrote that these symptoms first began "10 – 12 years" prior. (Def. Br. Ex. C at 6.) Dr. Canavati wrote to Dr. Warrener in a letter dated October 14, 2003:

5

> [Edsall] presents with multiple complaints, mainly lower back pain with
> intermittent radiation in the lower extremities. He also complains of neck pain
> and has intermittent numbness and paresthesias of both hands. The patient works
> on the railroad and does use power equipment which results in vibration of his
> hands. . . . His upper extremity pain and cramps seem to be more pronounced at
> night. He has increased difficulty on the job because mainly of his lower back
> pain, bending, twisting, or heavy lifting tend to aggravate his back and leg
> symptoms.

(Def. Br. Ex. C at 7.) Dr. Canavati's impression was that Edsall suffered from C4-5 and C5-6 central disk protrusion and bilateral foraminal stenosis, minimal disk protrusion at the C6-7 level, bilateral carpal tunnel syndrome, and low back and right lower extremity pain, while ruling out lumbar disc herniation. (Def. Ex. C at 8.) Dr. Canavati referred Edsall back to Dr. Gupta for testing on October 22, 2003, who determined that Edsall had "[m]inimal to mild left median motor neuropathy with axonal features" suggesting mild axonal loss, and he advised clinical correlation. (Resp. Br. Ex. 4 at 1-2.)

A few months later, on February 26, 2004, Edsall sustained a severe back injury, the subject of Count II of his Complaint, and he has not worked since February 27, 2004. (*See* Resp. Br. 2; Def. Br. 1.) This was the first time that Edsall missed a day of work for medical reasons since his 1989 acute back injury. (Edsall Dep. 244.)

Edsall filed the instant suit on December 23, 2005, seeking recovery for damages stemming from the February 2004 back injury and for "sustained repetitive stress injuries to his neck, back, wrists, and hands while performing trackman work" during his employment with CSXT. (Compl. ¶ 5.)

In its motion for partial summary judgment, CSXT argues that Edsall's "claims for repetitive stress injuries to the neck, back, wrists, and hands are barred by FELA's three-year statute of limitations, due to clear evidence that [Edsall] knew as early as the late 1980s that

6

these injuries were work-related." (Def. Br. 5.) CSXT points to Edsall's chiropractic treatments from 1988 through the early 1990s, and asserts that Edsall continued to experience pain throughout the 1990s and even into 2000. (Def. Br. 5-7.) CSXT also argues that Edsall's own testimony at his deposition "demonstrates that he was aware, from very early in his career, that the pain in his neck, back, arms and hands was caused by his work on the railroad, and that the pain he suffered constantly for nearly the next two decades had to be related to his job." (Def. Br. 7.)

Edsall maintains that the treatments he received from 1989 to 1993 have "no bearing on the statute of limitations" because they were for the acute back injury he sustained in 1989, which is "separate and distinct" from his claim of a repetitive stress injury. (Resp. Br. 5, 8.) Edsall avers that he "was not aware prior to 2004 that he had sustained permanent injuries," characterizing the chiropractic treatments before 1989 as too minor to put him on notice of a cumulative stress injury, and underscoring that the 1988 chiropractic records do not "discuss a relationship between [his] work and his intermittent back and neck pain." (Resp. Br. 10, 15.) Finally, Edsall argues that a genuine issue of material fact exists as to whether his symptoms prior to 2004 were so infrequent that he did not know he had a work-related cumulative injury. (Resp. Br. 15.)

## II. STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for

summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### III.  DISCUSSION

#### A.  FELA Statute of Limitations

Under the FELA, no action may be maintained "unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. "While the statute of limitations is an affirmative defense, the plaintiff bears the burden of establishing an exception to the statute of limitations." *Ricard v. Elgin, Joliet & E. Ry. Co.*, 750 F. Supp. 372, 374 (N.D. Ind. 1990) (citing *Drazan v. United States*, 762 F.2d 56, 60 (7th Cir. 1985)).

"In [a] FELA case, a cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." *Green v. CSX Transp., Inc.*, 414 F.3d 758, 763 (7th Cir. 2005) (citing *Tolston v. Nat'l R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir.1996); *Fries v. Chicago & Nw. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir.1990)). Stated another way, the analysis of both components involves "an objective inquiry into when the plaintiff knew or

8

should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Fries*, 909 F.2d at 1095.

"If there are many possible causes, all that is required is that the plaintiff know or have reason to know of a potential cause. Actual knowledge by plaintiff of causation is not necessary to a finding that a cause of action has accrued." *Williams v. CSX Transp., Inc.*, 1:03CV-348-TS, 2005 WL 1845173, at *4 (N.D. Ind. July 27, 2005) (citing *Fries*, 909 F.2d at 1096; *Nemmers v. United States*, 795 F.2d 628, 631-32 (7th Cir. 1986); *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir.1985)). Furthermore, knowledge of the injury and its cause is sufficient; "it does not matter whether the plaintiff realizes that a *legal* wrong has occurred." *Tolston*, 102 F.3d at 865 (citing *Kubrick*, 444 U.S. at 122-23; *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994)).

Thus, plaintiffs have "an affirmative duty to investigate the potential cause" of their injuries. *Fries*, 909 F.2d at 1095; *Tolston*, 102 F.3d at 865. "Additionally, an injury need not have reached its maximum severity before a claim accrues." *Williams*, 2005 WL 1845173, at *4 (citing *Fries*, 909 F.2d at 1096). However, if the defendant's act produces merely *de minimus* manifestations of injury, so that a reasonable person would not realize he was injured, then accrual of the statute of limitations is not triggered. *Green v. CSX Transp., Inc.*, 414 F.3d 758, 764 (7th Cir. 2005) (citing *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 821 (7th Cir. 1985)) (holding that a plaintiff's shoulder pain "may have been little more serious than a scratch, failing to put a reasonable person on notice that she had suffered a cognizable injury and must sue or risk losing her right to do so").

With this standard in mind, we now turn to the question raised in the instant case:

9

whether the evidence, read in a light most favorable to Edsall, creates a genuine issue of material fact that Edsall knew, or with reasonable diligence should have known, before December 23, 2002 (three years before he filed suit), that he suffered repetitive stress injuries to his back, neck, wrists, and hands, and that the source of these injuries was his work on the railroad.

### B.  Analysis

Clearly, Edsall knew that his job was causing him back, neck, and hand pain for many years before he filed this suit.  (*See, e.g*., Edsall Dep. 81-82, 84, 89-92, 98-99, 113-14, 117-19, 133-139, 144-45.)  Nonetheless, when viewing the facts in a light most favorable to Edsall, a reasonable jury could conclude that it was not until recently, within three years of the date of the filing of his complaint, that Edsall knew, or with reasonable diligence should have known, that his "everyday railroad aches and pains" were an indication that he suffered from repetitive stress injuries, at least with respect to his wrists and hands.

To explain, Edsall's pain over the years, particularly in his hands and wrists, could be reasonably construed as *de minimus* and intermittent – that is, "[n]ormal, everyday railroad aches and pain." (Edsall Dep. 89, 92 ("[Pain is] "part of the job.  All your body parts hurt from the railroad.")  Edsall took no prescription medicine to alleviate his aches and simply used over-the-counter medications as needed, never missing a day of work due to his complaints of chronic pain.  (Edsall Dep. 84, 89, 90, 100, 104, 118-119, 133, 134.)  "It is not the law that if you are scratched as a result of someone's negligence or other tort you must sue, even though the scratch is trivial, against the possibility that it might develop into something serious after the period of limitations has run."  *Green*, 414 F.3d at 764 (quoting *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.3d 807, 821 (7th Cir. 1985), *cert. denied*, 480 U.S. 945 (1987)).

10

Furthermore, when the pain did not resolve, Edsall seems to have diligently performed his "affirmative duty to investigate the potential cause" of his injuries, *see Fries*, 909 F.2d at 1095, by seeking medical treatment.  In 1988, he went to the chiropractor for manipulations of his spine, which the medical record suggests seemed to alleviate his symptoms.  In 1996, when his shoulder and arm bothered him to the point where it interfered with his sleeping, he again sought medical treatment.  In 1999, he visited his family physician for multiple complaints, including pain in his neck, shoulder, and hand.

Significantly, these physician visits by Edsall resulted in seemingly minor or non-specific diagnoses that a jury could conclude would not have alerted a reasonable person to cumulative trauma or repetitive stress, particularly with respect to his wrists or hands.  For example, though Dr. Jansen diagnosed Edsall with "[l]ower cervical fixation with myalgia and cephalgia lumbo-sacral strain/sprain syndrome" in 1988, it is unclear whether this diagnosis was shared with Edsall or whether either of them linked it to a permanent or repetitive stress injury.  (Resp. Br. Ex. 3 at 5); *see Williams*, 2005 WL 1845173, at *6 (finding that plaintiff's claims arising from carpal tunnel syndrome were not barred by the statute of limitations where plaintiff diligently sought doctor's care but was initially given a diagnosis of bursitis); *see also Helm v. CSX Transp.*, No. 1:03-CV-87 (N.D. Ind. June 24, 2004) (same).   Sprains and strains are arguably transient conditions, and other entries from 1988 indicated that Edsall was "improved[,]" "felt good[,]" or was "lots better."  (Resp. Br. Ex. 3 at 5.)

In that same vein, though Edsall checked the boxes for hand and wrist pain on his Patient Case History Sheet, evidently filled out when he first began seeing Dr. Jansen on February 2, 1988, the primary focus of the chiropractic treatment sessions that followed were Edsall's back

11

and neck; Dr. Jansen apparently made no diagnosis concerning Edsall's hands or wrists. In fact, the record reflects that the first nerve conduction study Dr. Gupta conducted in May 2003 had mainly normal results and did *not* reveal carpal tunnel syndrome. It was not until five months later and well within the relevant three-year period, that Dr. Canavati first indicated possible diagnoses of carpal tunnel syndrome, disk protrusion and bilateral foraminal stenosis for Edsall.[4]

Consequently, at least with regard to Edsall's wrists and hands injury, a reasonable jury could conclude that Edsall did not know, or should not have known, before December 23, 2002, that his pain resulted from a repetitive stress injury. (Def. Br. Ex. C at 7-8.) Stated another way, a reasonable jury could conclude that there is no evidence that any of Edsall's medical reports prior to December 2002 related to a wrist or hand injury "serious enough to put [Edsall] on notice that it was time to sue [his] employer or lose [his] right to do so[.]" *Green*, 414 F.3d at 764.

Admittedly, the question of whether Edsall knew, or should have known, of a repetitive stress injury to his back, and perhaps his neck, prior to December 23, 2002, is a much closer question. To explain, in 1988, when Edsall began visiting Dr. Jansen for back and neck therapy, he reported stiffness or soreness in his back and neck on some visits, but sometimes would return feeling improved, and even normal. (Resp. Br. Ex. 3 at 5.) Consequently, a reasonable fact finder could perhaps conclude that this pain was perhaps more intermittent in nature, rather than

---

[4] Of course, Edsall will ultimately bear the burden at trial to prove that he in fact does have the repetitive stress injuries that he claims. The Court notes that the record is a bit unclear whether Edsall was ever definitively diagnosed with carpal tunnel syndrome after his October 2003 nerve conduction study, as the record also suggests that Edsall's deficits may be attributed to a left hand fracture he incurred in 1983 while playing softball. (*See* Def. Br. Ex. C; Resp. Br. Ex. 4.)

the sort of severe, chronic pains the plaintiffs in *Fries*, 909 F.2d 1092, and *Tolston*, 102 F.3d 863, experienced.  *See, e.g., Green*, 414 F.3d at 764 (finding that the plaintiff suffered intermittent pain that was "not on the same scale as Tolston's knee problems and may not have been sufficient to put a reasonable person on notice that she had suffered a cognizable work-related injury"); *compare Fries*, 909 F.2d at 1094 (observing that the plaintiff's hearing problem was so severe that it worsened when he returned home from work, requiring two hours of silence each night to recuperate, and would only subside after two days of quiet on the weekend).

The record is fairly clear, however, that from 1989 to 1993, Edsall received four years of more intensive treatments and serious diagnoses of pain concerning his back and neck.  Edsall attributes these intensive treatments to his purported separate and distinct 1989 back and neck injury, while CSXT attributes them to a manifestation of Edsall's current complaints of repetitive stress injuries to his back and neck.

At the end of the day, however, the Court need not resolve this question at this juncture.  Since CSXT grouped Edsall's back, neck, wrists, and hands repetitive stress injuries together in one motion for summary judgment, making no effort to compartmentalize each injury, CSXT's motion for partial summary judgment will be denied because, as concluded *supra*, a reasonable jury could conclude that Edsall did not know, or should not have known, before December 23, 2002, that the pain in his hands and wrists resulted from a repetitive stress injury.  Therefore, whether the four years of intensive back and neck treatments can be attributed to a separate and distinct injury, as Edsall suggests, or whether these intensive treatments stemmed from a manifestation of Edsall's current complaints of repetitive stress injuries, as CSXT argues, will be a question reserved for a jury.  *See Payne*, 337 F.3d at 770 (stating that it is not for the Court to

13

make credibility determinations or decide which side's version of the facts is most likely true in swearing contests between the parties).

## IV.  CONCLUSION

For the foregoing reasons, Defendant CSXT's Motion for Partial Summary Judgment on Count I (Docket # 38) is DENIED.

SO ORDERED.

Enter for December 28, 2007.

S/Roger B. Cosbey  
Roger B. Cosbey  
United States Magistrate Judge