UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **RICKY LEE EDSALL, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:06-CV-389** |
| | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER
## ON COUNT II

### I.  INTRODUCTION

Ricky Lee Edsall, Sr., is suing CSX Transportation, Inc. ("CSXT"), under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et. seq.*, alleging under Count I that he "sustained repetitive stress injuries to his neck, back, wrists, and hands while performing trackman work" during his nearly thirty years employment with CSXT.  (Compl. ¶ 5.)  That claim, and whether it is barred as a matter of law by FELA's three year statute of limitations, is addressed in a separate Opinion and Order being entered today.  (Docket # 1.)

Count II of Edsall's Complaint and the subject of this Opinion and Order, contends that on February 26, 2004, Edsall sustained a serious back injury while pulling a spike at a derailment site within CSXT's Garrett, Indiana, rail yard.  (Compl. ¶ 11.)  CSXT also moved for partial summary judgment on that claim (Docket # 48), asserting that as a matter of law it provided Edsall with reasonably safe tools to pull the spike, in particular a claw bar, as well as a reasonably safe place for a trackman to work.  Edsall, on the other hand, alleges that CSXT was

1

negligent in failing to provide a hydraulic spike puller on this particular job, leaving him with only an outdated claw bar to use in an area where he could not find his footing, and as a result he injured his back.

In short, on this record, if we give Edsall every reasonable inference, a material issue of fact arises concerning whether CSXT was negligent.  Therefore, CSXT's motion for partial summary judgment must be DENIED.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Edsall worked as a trackman for CSXT from October 1976 until his injury on February 26, 2004.  (Edsall Dep. 52, 155.)  On the last day that he was on the job, Edsall was working in the Garrett rail yard and on a short-handed crew assigned to realign rails at a derailment site. (Edsall Dep. 192, 196.)  Normally Edsall's crew would have four men on it, but on this day, the foreman was ill and another member had been assigned elsewhere.  (Edsall Dep. 192.)

Nevertheless, Edsall, and the only other person on the crew, Dave Swonger, drove their work truck to the assigned site, which was only a short distance from where they had received their assignment.  (Edsall Dep. 196-97.)  Upon arrival, it was apparent that to realign the rail, they would need to reposition a tie and that this would require pulling three spikes, two on the inside of the track and one on the outside.  (Edsall Dep. 184.)  Normally, their work truck would be equipped with a hydraulic spike puller, but the spike puller had been in the repair shop for some time and was not available.  (Edsall Dep. 197, 199-200.)

Without the spike puller, Edsall had to use the claw bar that was in the truck.  (Edsall Dep. 197.)  Although a claw bar is a standard railroad tool, Edsall describes it as old and

---

[1] For summary judgment purposes, the facts are recited in the light most favorable to Edsall, the nonmoving party.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

outdated.  (Edsall Dep. 197.)  Perhaps this characterization of the claw bar comes from the fact that pulling spikes with it is a brutally hard job that imposes abuse on the hands, arms, shoulders, and back of the railroad worker using it, which is why Edsall would use the spike puller whenever he could.  (Edsall Dep. 204.)  In fact, Edsall says that the "whole purpose of having [the hydraulic spike puller] [is] so you don't have to use that claw bar to hurt yourself."  (Edsall Dep. 197.)

Edsall's crew had asked that CSXT fix their hydraulic spike puller; yet, even though weeks had passed since their request, the puller was still in the repair shop.  (Edsall Dep. 199-200.)  In any event, the testimony of Edsall and his supervisor, Daniel C. Coffin, both support the notion that whether to use a hydraulic spike puller or whether to use a claw bar (either in conjunction with a spike lifter or alone) depends on the job.  (Coffin Dep. 63.)

This particular job presented Edsall and Swonger with problems.  There was no ballast under the tie, perhaps due to the derailment, and the tie was new, making spike-pulling more difficult.  (Edsall Dep. 207-08.)  Nonetheless, Edsall was able to pull the first two inside spikes with the claw bar with relative ease.  (Edsall Dep. 209.)  The third, outside spike, however, presented a different problem.  (Edsall Dep. 209.)  Because of "soft ground" due perhaps to the weather and the missing ballast, the footing conditions were, in Edsall's words, "terrible"; he was essentially down in a hole and could not square his body.  (Edsall Dep. 208-10.)

As he pulled the last remaining spike, Edsall felt a sharp pain in his back and down his leg.  (Edsall Dep. 208.)  Returning to the truck, he complained about his foot getting cold and his fingers tingling, and thus Swonger promptly took him to the hospital emergency room. (Swonger Dep. 22.)  Eventually, Edsall underwent medical treatment, had back surgery for a

herniated disc, and was told his injury was permanent.  (Edsall Dep. 238; Compl. ¶ 10.)  He has not returned to work at CSXT since the incident.  (Edsall Dep. 181-82.)

Edsall maintains that if he had had the hydraulic spike puller that day, rather than where it was, in a Toledo repair shop, he would not have had to stand in the awkward fashion that he did to remove the third spike and would not have been injured, because the spike puller would have done the lifting for him.  (Edsall Dep. 211.)  Indeed, CSXT's counsel elicited some telling testimony from Edsall on the question of whether, in pulling the third spike, the claw bar was unsafe, in contrast to the hydraulic spike puller merely being "safer:"

> Q     [W]hen you were going to pull that spike, did you feel that anything you were doing was unsafe?
>
> A     No.  Other than not having the proper equipment.
>
> Q     And again, I'm talking about using the positioning that you were in and when you went to go--- did you feel you were actually risking your own safety in what you were doing?
>
> A     Yeah.  In a sense, yeah, because I really —if I had the proper tools I wouldn't have had to use that claw bar.[2]

(Edsall Dep. 212.)

On that score, later in his deposition Edsall opines that he had inadequate equipment for pulling the third spike, which he describes as "both the claw bar and [the] broken hydraulic spike puller."  (Edsall Dep. 218.)  On the question of causation, Edsall is specific – that if he had had the "proper tool" (that is, the hydraulic spike puller), he would not have used the claw bar and would not have been injured.  (Edsall Dep. 200.)

### III.  STANDARD ON MOTION FOR SUMMARY JUDGMENT

---

[2] Edsall's deposition was conducted by CSXT's former counsel.

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

The FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. "The test of a jury case under the FELA 'is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought.'" *Fulk v. Ill. Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957) (emphasis applied in *Fulk* omitted)). Although FELA is a broad remedial statute, a plaintiff must

still prove the common law elements of negligence, including duty, breach, foreseeability, and causation. *Id.*; *see also Coffey v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 479 F.3d 472, 476 (7th Cir. 2007); *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F.Supp. 1566, 1571 (N.D. Ill. 1996).

Indeed, the general principles just outlined are the basis for CSXT's motion, because in its view, Edsall has failed to show that it was negligent in providing him with a reasonably safe place to work.  (CSXT Mem. in Supp. 6.)  In fact, CSXT maintains that Edsall's argument misses a crucial point; that is, merely because CSXT failed to provide a "safer" or preferred alternative for pulling spikes does not mean that what it did give him, the claw bar, was unreasonably unsafe.  (CSXT Reply Br. 2.)

Clearly, there is some basis for CSXT's assertion, as the Seventh Circuit Court of Appeals has observed that "proof of a safer alternative is not necessarily proof of negligence-[the railroad] could have provided a reasonably safe workplace notwithstanding the fact that safer workplace alternatives exist."  *Taylor v. Ill. Cent. R.R. Co.*, 8 F.3d 584, 586 (7th Cir. 1993) (citing *Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987)).  Even though *Stillman* seems only to be addressing an evidentiary ruling concerning the admissibility of testimony of a safer alternative, the overarching proposition for which CSXT cites it has clearly gained currency.  *Darrough v. CSX Transp., Inc.*, 321 F.3d 674, 676 (7th Cir. 2003) ("The question is whether the railroad exercised reasonable care in creating a reasonably safe working environment, not whether that working environment could have been safer." (citing *Walker v. Ne. Reg'l Commuter R.R. Corp.*, 225 F.3d 895, 899 (7th Cir. 2000))).

Moreover, as CSXT is quick to point out, other courts have come to a similar conclusion in instances where the evidence has failed to show that the method or procedure used by the

railroad was not unsafe. *See, e.g.*, *McKennon v. CSX Transp., Inc.*, 897 F. Supp. 1024, 1027 (N.D. Tenn. 1995); *Jennings v. Ill. Cent. R.R. Co.*, 993 S.W.2d 66, 72 (Tenn. Ct. App. 1999); *Duhon v. S. Pac. Transp. Co.*, 720 So. 2d 117, 124 (La. Ct. App. 1998), *abrogated on other grounds by Indep. Fire Ins. Co. v. Sunbeam Corp.*, 755 So. 2d 226 (La. 2000).

But the issue of what is reasonably safe cannot be viewed in a factual vacuum. On this point, a cue can be taken from the United States Supreme Court case of *Stone v. New York, Chicago, & St. Louis Railroad Co.*, 344 U.S. 407, 409 (1953). *Stone,* like this case, involved a track worker who was removing ties and became injured using a procedure dictated by the railroad "straw boss", even though other alternative methods for removing ties were available. *Id*. As the Supreme Court viewed it, the issue was "[w]hether the straw boss in light of the risks should have used another or different method to remove the tie or failing to do so was culpable . . . [.]" *Id*. Stated a bit more globally, evidence of alternative methods can be helpful in determining whether a reasonable and prudent railroad would have required use of the method that injured its employee. In *Stone*, for instance, the Court cataloged such things as the track crew's experience with stubborn ties and the alternative ways of removing them, as comprising "the situation to be appraised [by the trier of fact] in determining whether [the railroad] was negligent." *Id*.

The underpinning of *Stone* and its view that the trier of fact must determine whether the method employed by the railroad was reasonable under the circumstances, also has currency in this Circuit. In *Williams v. Northeast Illinois Regional Commuter Railroad Corp*., No. 00 C 2250, 2002 WL 1433724, at *9 (N.D. Ill. June 28, 2002), the district court denied summary judgment when plaintiff brought forth evidence to question the railroad's reasonableness in

7

providing him with a sledgehammer to break up concrete, as opposed to a jackhammer.  Indeed, the Seventh Circuit Court of Appeals has recognized that although a safer alternative method "is not necessarily proof of negligence," it nonetheless is still presumably admissible under certain circumstances.  *Taylor*, 8 F.3d at 586.

Like the plaintiff in *Williams*, Edsall also has testimony, his own, that the tool he was using was a risk to his safety, particularly in connection with removing the third spike.  In fact, we do not understand Edsall to necessarily be arguing that it was unreasonable to have him use the claw bar to remove the first two spikes, since at least in that instance he had adequate footing.  We do think, however, that if we give Edsall every reasonable inference, a jury could conclude that requiring Edsall to use a claw bar to remove a spike from a new tie in a situation where he had "terrible" footing and could not square his body to his work, was unreasonably dangerous.  (Edsall Dep. 210-12, 218.)

Part of what will inform the jury on whether use of the claw bar was unreasonably unsafe is the prospect of another alternative – the hydraulic spike puller, something Edsall's crew had specifically requested.  Edsall notes, of course, that although the machine makes pulling practically any spike easier, in this application (where Edsall could not square his body to the third spike due to the terrain and poor footing) it would have allowed him to square his body and it would have done all the pulling for him, making use of the claw bar unreasonable.  A factually similar case, *Rodriguez v. Delray Connecting Railroad*, 473 F.2d 819, 821 (6th Cir. 1973), underscores the point.  In *Rodriquez*, the plaintiff was injured while attempting to loosen spikes with a sledgehammer and one of his allegations at trial was that the railroad was negligent for failing to provide his crew with an automatic spike puller.  *Id*.  In affirming the jury's verdict for

8

the plaintiff, the Sixth Circuit Court of Appeals observed that "[i]n view of [evidence that safety was an advantage of the hydraulic spike remover] and considering the special treatment afforded F.E.L.A. cases, we cannot say that the jury was not entitled to find the old maul method 'unreasonable.'"  *Id.*

As this Court has previously observed, a FELA defendant has a duty "to exercise reasonable care in providing a reasonably safe place to work, reasonably safe conditions in which to work and reasonably safe tools and equipment."  *Beeber v. Norfolk S. Corp.*, 754 F. Supp. 1364, 1368 (N.D. Ind. 1990).  On this record, it must be left to the jury to determine whether CSXT was reasonable in providing Edsall with only a claw bar to pull a spike from a new tie in an area it knew was freshly damaged from a derailment and thus likely to contain poor footing.  Part of that analysis necessarily entails an examination of the alternative method for removing such a spike, *Rodriguez,* 473 F.2d at 821; that is, a machine that if it had been available on February 26, 2004, would have afforded Edsall with an arguably safe way to approach the situation involving the third spike.  Altogether, whether CSXT provided Edsall with a reasonably safe place to work under the circumstances is "peculiarly for the jury."  *Stone*, 344 U.S. at 409.

Consequently, CSXT's motion for partial summary judgment will be denied.

## V.  CONCLUSION

For the foregoing reasons, Defendant CSXT's Motion for Partial Summary Judgment on

Count II (Docket # 48) is DENIED.[3]

    SO ORDERED.

    Enter for December 28, 2007.

                                                    S/Roger B. Cosbey
                                                    Roger B. Cosbey
                                                    United States Magistrate Judge

---

[3] Edsall also alleges that his crew was short two workers on February 26, 2004, and that, as a result, CSXT was negligent for providing insufficient manpower.  We do not understand how this fact could constitute a breach of CSXT's duty in this instance, however, because using a claw bar is a one-person job (Edsall Dep. 199), and using a spike puller does not require more than two people.