UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **RICKY LEE EDSALL, SR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.  1:06-CV-389 |
| | ) | |
| **CSX TRANSPORTATION, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

This matter is before the Court[1] on two motions in limine, one filed by Plaintiff Ricky Lee Edsall, Sr. ("Edsall"), on January 15, 2008 (Docket # 72), and the other filed on the same day by Defendant CSX Transportation, Inc. ("CSXT") (Docket # 70), and two sets of objections to trial exhibits, one filed by Edsall on January 18, 2008 (Docket # 74), and the other filed by CSXT on January 21, 2008 (Docket # 79).  Briefing was completed on the motions in limine on January 25, 2008. (*See* Docket # 73, 80-83.)

For the reasons provided, Edsall's motion in limine will be GRANTED in part and DENIED in part, and CSXT's motion in limine will be GRANTED.  Furthermore, Edsall's objections to CSXT's trial exhibits will be SUSTAINED in part and OVERRULED in part, and CSXT's objections to Edsall's trial exhibits will be SUSTAINED in part and TAKEN UNDER ADVISEMENT in part.[2]

### I.  NATURE OF AN ORDER IN LIMINE

"A motion in limine is a request for guidance by the court regarding an evidentiary

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] This Order assumes the reader is familiar with the factual and legal background of this case.

question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion in limine is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial"). In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [in limine] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the District Judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

Thus, a ruling on a motion in limine is not a final ruling on the admissibility of the evidence which is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion in limine is essentially an advisory opinion, "merely speculative in effect." *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## II.  EDSALL'S MOTION IN LIMINE

### A.  Railroad Retirement Board and Other Collateral Source Income

Edsall first seeks an order in limine to exclude any evidence regarding his eligibility for and receipt of a disability annuity and sickness benefits through the Railroad Retirement Board ("RRB") or any other source, stating that it is "irrelevant, unduly prejudicial and inadmissable as collateral source benefits." (Pl.'s Br. in Supp. of Mot. In Limine ("Pl.'s Supp. Br.") 1-4.)  He

2

further requests that CSXT be precluded from mentioning or introducing any evidence of his being or requesting to be placed "on disability" or "retirement," stating that it "implies receipt of collateral benefits and is unduly prejudicial." (Pl.'s Supp. Br. 2.)  CSXT, however, objects to Edsall's request to exclude this evidence, stating that it demonstrates Edsall's lack of motivation to return to work or to mitigate his damages. (Def.'s Br. in Resp. to Pl.'s Mot. In Limine ("Def.'s Resp. Br.") 1-3.)

In *Eichel v. New York Central Railroad Co.*, 375 U.S. 253 (1963), the Supreme Court barred any reference to the fact that the plaintiff received collateral income in the form of disability benefits from the RRB.  The Supreme Court held that the likelihood of misuse of this evidence by the jury outweighed its value. *Id.* at 255.

After carefully reviewing the arguments raised by the parties, the Court will follow *Eichel* and will GRANT Edsall's motion because the risk of prejudice outweighs the probative value of this evidence. *See* Fed. R. Evid. 403.  This ruling does not preclude CSXT from offering other less prejudicial methods of proof to show lack of motivation.

**B.  30-60 Rule**

CSXT does not object to the granting of a motion in limine seeking the exclusion of any evidence implying that Edsall could have taken retirement at age sixty pursuant to the "30-60 amendment" to the Railroad Retirement Act, stating that the Court does not need to reach this issue because it does not intend to offer evidence of the 30-60 rule or to discuss retirement benefits; in other words, CSXT deems the issue moot. (Def.'s Resp. Br. 4-5; Pl.'s Supp. Br. 5.) Nonetheless, Edsall's motion will be GRANTED with respect to this evidence.

**C. Edsall's Unrelated Medical Conditions**

CSXT has articulated that it does not object to the granting of a motion in limine seeking the exclusion of evidence concerning Edsall's unrelated medical conditions, but that it does intend to present testimony and evidence concerning the medical history of Edsall's neck and back. (Def.'s Resp. Br. 5; Pl.'s Supp. Br. 6.)  CSXT further states that if any medical record that it plans to introduce concerning Edsall's neck and back refers to any other medical condition, it will make the record available to Edsall before it is introduced into evidence so that his counsel can determine whether redaction is warranted.  Consequently, Edsall's motion will be GRANTED with respect to unrelated medical conditions.  Counsel are to confer regarding appropriate redactions to any exhibits that refer to unrelated medical conditions.

**D. Prior Complaints, Conditions, and Medical Treatment of Body Parts and Conditions at Issue**

Edsall next seeks an order in limine prohibiting CSXT from offering any testimony or evidence, including excerpts or portions of Edsall's medical records, pertaining to "prior complaints, prior conditions, and prior medical treatment to the body parts and physical conditions at issue in this lawsuit," unless there is competent medical testimony that establishes a causal connection between such pre-existing conditions or treatment and Edsall's post-incident condition. (Pl.'s Supp. Br. 7.)  CSXT, in response, points to evidence in the record, and indeed, the final pretrial order, indicating that Edsall maintains that he was disabled by an aggravation of a pre-existing condition pertaining to his back and neck. (Def.'s Resp. Br. 6.)

Court's have held that a plaintiff's damages under FELA may be reduced to the extent that his current condition is the result of a pre-existing condition, rather than the railroad's negligence. *See Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1565 (7th Cir. 1990); *see*

4

*also Richardson v. Mo. Pac. R.R. Co.*, 186 F.3d 1273, 1278 (10th Cir. 1999) ("Plaintiff is entitled to recover damages for any aggravation of the pre-existing condition, but those damages are limited to the additional increment caused by the aggravation."); *Stevens v. Bangor & Aroostook R.R. Co.*, 97 F.3d 594, 601 (1st Cir. 1996) ("It is true that as a general matter, when a defendant's negligence aggravates a plaintiff's preexisting health condition, the defendant is liable only for the additional increment caused by the negligence and not for the pain and impairment that the plaintiff would have suffered even if the accident had never occurred."). Therefore, any pre-existing conditions concerning Edsall's back or neck are indeed relevant.

Moreover, as to the requirement of expert testimony, in a similar case the Tenth Circuit Court of Appeals expressly rejected the plaintiff's argument that there must be expert testimony presented apportioning a plaintiff's injuries on a percentage basis between his pre-existing conditions and the workplace incident before a jury can be asked to apportion his injuries. *Sauer v. Burlington N. R.R. Co.*, 106 F.3d 1490, 1494 (10th Cir. 1997). The Court stated:

> We reject [the plaintiff's] argument that there must be expert testimony precisely apportioning the injury on a percentage basis between preexisting conditions and prior accidents. The extent to which an injury is attributable to a preexisting condition or prior accident need not be proved with mathematical precision or great exactitude. The evidence need only be sufficient to permit a rough practical apportionment. Although apportionment may be difficult . . . it is a question for which juries are well suited.

*Id*. (citations omitted); *see also Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807 (7th Cir. 1985) (articulating that the district court should have compelled the jury to reduce the plaintiff's damages by the probability that the plaintiff would have become schizophrenic regardless of the defendant's tortuous conduct, even though no expert testimony precisely established the probability as a percentage).

5

Here, considering that Edsall contends that the incident at issue aggravated pre-existing back and neck problems and given that his medical records clearly suggest a long history of pre-existing back and neck conditions, a sufficient causal connection between the pre-existing conditions or treatment and Edsall's post-incident condition exists, *see Sauer*, 106 F.3d at 1494, at least, viewing the record as a whole (*see, e.g.*, Pl.'s Trial Br. 11), to such a degree that the jury may infer such a connection.  Therefore, Edsall's motion will be DENIED.  Of course, any apportionment will be the responsibility of the jury.

### E.  Edsall's Lack of Warm Up Exercises and Lack of Back-Support Brace

CSXT does not object to the granting of a motion in limine excluding any testimony and evidence concerning Edsall's failure to perform stretching or "warm-up" exercises prior to pulling the spikes or that he was not wearing a back-support brace when pulling the spikes. (Def.'s Resp. Br. 11; Pl.'s Supp. Br. 8.)  Accordingly, Edsall's motion will be GRANTED with respect to this evidence.

### F.  CSXT's Vocational Rehabilitation Program

Anticipating an argument by CSXT that he did not mitigate his damages, Edsall also seeks the granting of a motion in limine to exclude testimony and evidence concerning the existence and availability of CSXT's vocational program and the fact that he never participated in the program. (Pl.'s Supp. Br. 9.)  He contends that because there is no evidence that his participation in the vocational rehabilitation program would have led to comparable employment or would have reduced the amount of his wage loss, such evidence is irrelevant, misleading, and prejudicial. (Pl.'s Supp. Br. 9-10.)

A plaintiff has an obligation under FELA to mitigate his damages. *See Russell v. Nat'l*

6

*R.R. Passenger Corp.*, 189 F.3d 590, 596 (7th Cir. 1999); *DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 678, 688 (7th Cir. 1995).  Many courts have held, correctly we believe, that evidence of a FELA plaintiff's failure to take part in railroad vocational rehabilitation programs is admissable to show that a plaintiff has failed to mitigate his damages, without a requirement that the defendant demonstrate that the plaintiff's participation in the programs would have resulted in employment. *See, e.g., Wieczorek v. S. Pac. Transp. Co.*, No. 97-1154, 1998 WL 314365, at *2 (10th Cir. June 4, 1998) (unpublished); *Duren v. Union Pac. R.R. Co.*, 980 S.W.2d 77, 80 (Mo. Ct. App. 1998); *Yauch v. S. Pac. Transp. Co.*, 10 P.3d 1181, 1190 (Ariz. Ct. App. 2000); *Mikus v. Norfolk & W. Ry. Co.*, 726 N.E.2d 95, 110 (Ill. Ct. App. 2000); *Brown v. Chicago & N. W. Transp. Co.*, 516 N.E.2d 320, 325 (Ill. Ct. App. 1987).  In fact, Edsall has failed to cite a single case that has held otherwise.

Therefore, Edsall's motion will be DENIED with respect to this evidence.

### G.  Edsall's Prior Guilty Pleas

CSXT does not object to the granting of a motion in limine to exclude evidence or testimony concerning Edsall's two guilty pleas involving relatively minor charges that occurred in his youth. (Def.'s Resp. Br. 14; Pl.'s Supp. Br. 10.)  Accordingly, since such evidence would clearly be irrelevant, Edsall's motion will be GRANTED.

### H.  Prior Discipline by CSXT

CSXT does not object to the granting of a motion in limine to exclude evidence of prior disciplinary actions taken by CSXT against Edsall. (Def.'s Resp. Br. 15; Pl.'s Supp. Br. 10-11.)  Accordingly, since this evidence would be irrelevant as well, Edsall's motion will be GRANTED.

### I.  Circumstances Regarding Edsall's Hiring of Counsel

CSXT does not object to the granting of a motion in limine to exclude evidence regarding the time or circumstances under which Edsall hired his attorneys, provided that Edsall does nothing to "open the door" to this type of testimony. (Def.'s Resp. Br. 15; Pl.'s Supp. Br. 11.)  In any event, this part of Edsall's motion will be GRANTED.

### J.  Assumption of Risk Defense

CSXT does not object to the granting of a motion in limine to exclude evidence that suggests Edsall assumed the risk of working with the claw bar on February 26, 2004, agreeing that assumption of the risk is not an issue in a FELA case. (Def.'s Resp. Br. 15; Pl.'s Supp. Br. 11-12.)  Nonetheless, CSXT states that it does intend to introduce evidence "that the decision to use the claw bar was Plaintiff's decision," which CSXT contends, and the Court agrees, does not by itself implicate the doctrine of assumed risk. *Russell*, 189 F.3d at 595 (explaining that assumption of the risk involves taking on a job for which there were no safe alternatives, whereas contributory negligence means being aware of the risks and ignoring a safe alternative). Therefore, Edsall's motion will be GRANTED, provided however, CSXT will not be precluded from eliciting testimony that it was Edsall's decision to use the claw bar.

## III.  CSXT'S MOTION IN LIMINE

### A.  Lack of Workers' Compensation Benefits

CSXT seeks to prevent Edsall, his attorney, and any witness from stating in the presence of the jury that Edsall is ineligible for workers' compensation benefits or that the FELA is his only source of compensation. (Def.'s Mot. in Limine 2.)  It asserts that "[s]uch testimony "undermines a fundamental tenet of the FELA: that railroads are not insurers of their employees'

8

safety" and is "certain to evoke sympathy for [Edsall] and leave the inevitable impression with the jury that, if an award is not made under FELA, [he] will be left without proper compensation." (Def.'s Mot. in Limine 2.)  Edsall, in his one-sentence response, states that he has "no [r]esponse to this motion other than to state that he anticipates the jury will be informed during voir dire and via instruction that FELA provides the sole remedy for bodily injury claims of railroad workers against their employers." (Pl.'s Resp. Br. 1.)

In *Schmitz v. Canadian Railway Co.*, 454 F.3d 678 (7th Cir. 2006), the Seventh Circuit Court of Appeals held that the jury should not be told that a FELA plaintiff is not entitled to workers' compensation or that the FELA is the plaintiff's sole source of compensation. Specifically, the Court of Appeals stated:

> A jury instruction that [the plaintiff] had no means of recovery other than FELA could have prejudiced [the defendant] if the jury was moved to find for [the plaintiff] out of concern that his injury might otherwise go uncompensated.  Other circuits have held such an instruction to be inappropriate, and we agree.  The district court properly declined to instruct the jury that [the plaintiff] was ineligible for workers' compensation payments.

*Id.* at 685 (internal citations omitted).

Therefore, the Court will follow *Schmitz* and will GRANT CSXT's motion precluding Edsall, his counsel, and his witnesses from referring to the exclusivity of FELA's remedies (i.e., that FELA is Edsall's sole source of compensation) and the unavailability of workers' compensation.

### B.  Subsequent Remedial Measures

Next, CSXT argues that evidence regarding any subsequent remedial measures is inadmissible under Federal Rule of Evidence 407. (Def.'s Mot. In Limine 5-6.)  More particularly, CSXT contends that Edsall may seek to introduce the corrective action section of

the "Key Factors Analysis Report" prepared by CSXT after Edsall reported his incident, as well as evidence that Dan Coffin, Edsall's supervisor, ordered another hydraulic spike puller after the incident so there would always be a spare unit available to employees. (Def.'s Mot. in Limine 5-6.)

>Rule 407 provides:
>
>When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.  This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407.  "The purpose of Rule 407 is to promote safety by removing the disincentive to take post-accident safety measures that would exist if the accident victim could introduce evidence of these measures on the issue of the defendant's liability." *Probus v. K-Mart, Inc*., 794 F.2d 1207, 1210 (7th Cir. 1986).

In turn, Edsall directs the Court's attention to *Cupp v. National Railroad Passenger Corp*., 138 S.W.3rd 766, 775-76 (Mo. Ct. App. 2004), in which the court concluded that post-accident investigative reports were admissible, stating that "[t]he public policy rationale for excluding evidence of post-accident remedial measures does not apply if the measures in question were planned, provided for, or undertaken prior to that accident."  Edsall contends that in obtaining the spare hydraulic spike puller, CSXT was not devising a new plan or remedial measure to avoid injury; rather, this action constituted the "same measures CSXT planned for, provided for, and undertook before the Edsall incident." (Pl.'s Resp. to Def.'s Mot. In Limine 2.) As Edsall sees it, CSXT's conclusion in the Key Factors Analysis Report is a party admission,

10

not a subsequent remedial measure. (Pl.'s Resp. to Def.'s Mot. In Limine 1-4.)

We find Edsall's argument based on *Cupp* unpersuasive in this instance.  In contrast to *Cupp*, here there is simply no evidence that suggests that CSXT had planned to obtain, much less undertook to obtain, a spare hydraulic spike puller for its employees prior to Edsall's incident or, for that matter, any other "corrective action" in the Key Factors Analysis Report.  Since the feasability of having a spare spike puller available for trackmen to use is not controverted, Federal Rule of Evidence 407 instructs that the corrective action section of the Key Factors Analysis Report is otherwise not admissible.

Consequently, since this evidence is inadmissible under Federal Rule of Evidence 407, CSXT's motion to exclude it as subsequent remedial measures will be GRANTED.

### C.  Testimony That Edsall Was Convinced by CSXT Not to File a Claim for His Alleged 1989 Back Injury

Edsall does not object to the granting of a motion in limine to exclude testimony that the reason Edsall did not fill out an incident report or file a claim with CSXT after his alleged back injury in 1989 was because his supervisor allegedly told him that a report filed more than forty-eight hours after an incident could result in an investigation, provided that CSXT does nothing to "open the door" to the topic. (Def.'s Mot. In Limine 7; Pl.'s Resp. to Def.'s Mot. In Limine 4.) Frankly, under Federal Rule of Evidence 402, the entire question of whether Edsall was ever compensated for his 1989 back injury is irrelevant, and certainly its prejudicial effect (e.g., a subtle suggestion that the jury should correct that purported injustice) outweighs any probative value under Federal Rule of Evidence 403.  Accordingly, CSXT's motion will be GRANTED with respect to this evidence.

### IV.  EDSALL'S OBJECTIONS TO CSXT'S TRIAL EXHIBITS

Edsall first objects to CSXT's trial exhibit "s" (CSXT medical department/vocational rehabilitation correspondence to Edsall) for the reasons set forth in Section II.6 of his Brief in Support of his Motion in Limine.  For the reasons articulated in Section II.F *supra*, Edsall's objection will be OVERRULED.

Next, Edsall states that he has no objection to CSXT's trial exhibit "v" (his tax returns), provided that his personal identifiers and information about other persons, such as his wife, are redacted.  Therefore, to the extent that Edsall is asserting an objection to the admission of his tax returns, it is OVERRULED, provided, however, that CSXT first lays a proper foundation for the evidence and that the documents are appropriately redacted.

Edsall also objects to CSXT's trial exhibit "w" (his medical records from various providers) for the reasons set forth in Sections II.3 and II.4 of his Brief in Support of his Motion in Limine.  For the reasons stated in Section II.C *supra*, Edsall's objection will be SUSTAINED concerning unrelated medical conditions, but DENIED and OVERRULED to the extent that the records involved pre-existing medical conditions as explained in Section II.D *supra*.

Edsall next objects to CSXT's trial exhibit "x" (his RRB file) for the reasons set forth in Section II.1 of his Brief in Support of his Motion in Limine and because he believes the information is irrelevant.  For the reasons stated in Section II.A *supra*, Edsall's objection will be SUSTAINED.

Finally, Edsall objects to CSXT's trial exhibit "z" (deposition exhibits) to the extent they may include matters excluded through his Motion in Limine.  Accordingly, Edsall's objection is SUSTAINED to the extent that any deposition exhibit includes matters that fall within this Order granting his Motion in Limine.

## V.  CSXT'S OBJECTIONS TO EDSALL'S TRIAL EXHIBITS

CSXT objects to Edsall's trial exhibit "19" (Key Factors Analysis Report) for the reasons set forth in Section II.B of its Motion in Limine.  For the reasons articulated in Section III.B *supra*, CSXT's objection will be SUSTAINED to the extent that the Key Factors Analysis Report contains subsequent remedial measures.

CSXT advances other objections to Edsall's trial exhibits; however, they will be addressed, if necessary, at the trial management conference.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff's motion in limine (Docket # 72) is GRANTED in part and DENIED in part as set forth in this Order.  Defendant's motion in limine (Docket # 70) is GRANTED.

Plaintiff's Objections to Defendant's Exhibits (Docket # 74) is SUSTAINED in part and OVERRULED in part as set forth in this Order.  Defendant's Objections to Plaintiff's Trial Exhibits (Docket # 79) is SUSTAINED in part and TAKEN UNDER ADVISEMENT in part as set forth in this Order.

It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury.  Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for January 28, 2008.

 S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge